IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 5, 2001 Session

## RICHARD C. O'LEARY, ET UX. v. ANN M. JOHNSON, ET AL.

**A Direct Appeal from the Chancery Court for Sumner County**
**No. 99C-253     The Honorable Tom E. Gray, Judge**

---

**No. M2000-03110-COA-R3-CV - Filed January 15, 2002**

---

This case involves a payoff of a loan secured by a deed of trust on real estate and the failure to release the deed of trust on the record. In connection with a refinancing by the property owner, the title company closing agent issued a check to pay off the existing loan secured by a deed of trust. The check-payees, husband and wife, failed to negotiate the check and did not release the deed of trust. Some ten years later, after the death of the husband, the wife-payee found the check in her husband's files, and her attempt to negotiate the check failed because the account on which it was drawn was closed. She duly notified the title company closing agent, but it refused to reissue the check. Some three years later, the owners of the property tried again to refinance their loan, and in examining the title, it was discovered that the deed of trust, which presumably had been paid off, had not been released. The property owners filed suit against the title company closing agent and the holder of the note secured by the unreleased trust deed. The holder of the note filed a counter-claim against the property owners and a cross-claim against the title company closing agent. After a nonjury trial, the trial court awarded plaintiffs judgment against the title company closing agent for the amount of the payoff check issued to pay the previous loan and dismissed the cross-claim against the title company. The holder of the previous loan was awarded a judgment against the property owners for the amount of the principal balance due, plus attorney fees. The title company has appealed. We vacate in part, modify and affirm as modified.

**Tenn.R.App.P. 3; Appeal as of Right; Judgment of the Chancery Court Vacated in Part, Modified in Part, Affirmed as Modified**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which DAVID R. FARMER, J. and HOLLY KIRBY LILLARD, J., joined.

Blakeley D. Matthews, Nashville, For Appellant, Chicago Title Insurance Company

Boyd W. Venable, III, Sevierville, For Appellee, Ann M. Johnson

Mark A. Ellmore, Jr., Nashville, For Appellee, Richard C. O'Leary and Sherrye H. O'Leary

**OPINION**

In 1986, Plaintiffs, husband and wife (the "O'Learys" or "Plaintiffs"), purchased property from Defendant Ann H. Johnson and her late husband, Orman J. Johnson, Jr. The purchase price was $80,000.00, payable $40,000.00 cash and $40,000.00 evidenced by a promissory note secured by a deed of trust on the property. In 1988, Plaintiffs decided to refinance and pay off the Johnson note. Defendant Chicago Title Insurance Company ("Chicago Title") closed the refinancing loan and sent the Johnsons a check for $38,175.47 to pay off the balance due on the $40,000 secured note. The Johnsons never negotiated the check or released the Deed of Trust, and the Plaintiffs never paid any more on the secured indebtedness.

In 1996, following Mr. Johnson's death, Mrs. Johnson discovered the $38,175.47 payoff check in her late husband's files, and attempted to negotiate the check. Mrs. Johnson's bank told her it was a "stale" check, and that the account on which it was drawn was closed. Although the bank did not honor the check, and Chicago Title refused to reissue the check, Mrs. Johnson took the check, placed it in her night table drawer, and did not pursue the matter further. Chicago Title apparently never informed the O'Learys that the check was not negotiated or that the deed of trust was not released.

Three years after Mrs. Johnson alerted Chicago Title that the check had never been cashed by attempting to negotiate the instrument, the O'Learys decided to borrow against the equity in their property and refinance their existing loan at a lower interest rate. The O'Learys' lender informed them that there was an unreleased deed of trust on the property in favor of the Johnsons. The O'Learys never proceeded with the mortgage refinance, and there is some dispute about whether Chicago Title agreed to insure the O'Learys' new loan. The O'Learys testified that the lender would not approve the loan because of the cloud on the O'Learys' property, but Chicago Title presented evidence which indicated that the O'Learys voluntarily chose not to proceed with the refinance loan.

On September 9, 1999, the O'Learys filed a complaint against Chicago Title and Mrs. Johnson. The complaint alleges that Defendant Chicago Title breached its fiduciary duty to the O'Learys by not properly reconciling the escrow account following the 1988 closing, arguing that a reconciliation would have revealed that the payoff check was never negotiated. Plaintiffs also allege that Mrs. Johnson's refusal to execute a release of the Deed of Trust on the property while retaining the payoff check constituted negligence, fraud and deceit. Mrs. Johnson filed a counterclaim against the O'Learys for the balance due on the secured indebtedness and a cross claim against Chicago Title for replacement of the unnegotiated check.

The trial court awarded the Plaintiffs judgment against Chicago Title in the amount of the payoff check, along with $46,281.22 in prejudgment interest. The court dismissed Mrs. Johnson's cross claim against Chicago Title, but awarded Mrs. Johnson a judgment against the O'Learys for the amount of the outstanding mortgage, plus attorney's fees, finding that the Deed of Trust in favor of the Johnson's was in default. The trial court's Order reads, in pertinent part:
> Based upon . . . findings of fact and conclusions of law, it is hereby
> ORDERED as follows:

1.     The plaintiffs, Richard C. O'Leary and Sherrye H. O'Leary, shall have and recover from the defendant, Chicago Title Insurance Company, a judgment in the amount of $84,456.69. This judgment is comprised of $48,175.47, the amount which was in dispute, and $46,281.22 in pre-judgment interest for a period of 12 years and 45 days. The plaintiffs' claims against Chicago Title Insurance Company for punitive damages and for an alleged violation of the Tennessee Consumer Protection Act are dismissed. All claims by plaintiffs against the defendant Ann. M. Johnson are dismissed.

2.     The counter-plaintiff, Ann M. Johnson, shall have and recover from the counter-defendants, Richard C. O'Leary and Sherrye H. O'Leary, a judgment in the amount of $45,845.47. This judgment is comprised of $38,175.47, the amount which was in dispute, and $5,670.00 in attorneys' fees.

3.     All claims by the cross-plaintiff, Ann M. Johnson, against the cross-defendant, Chicago Title Insurance Company, are barred by the statute of limitations and are hereby dismissed.

4.     Court costs are taxed to Chicago Title Insurance Company, for which execution may issue if necessary.

Chicago Title appeals and presents the sole issue: Whether the trial court erred in awarding Plaintiffs prejudgment interest. Mrs. Johnson presents the issue of whether the trial court erred in dismissing her cross-claim against Chicago Title based upon the statute of limitations. The O'Learys present three additional issues: (1) Whether the trial court erred in awarding Mrs. Johnson attorney fees pursuant to the Deed of Trust; (2) Whether the trial court erred in denying the O'Learys punitive damages against Chicago Title; and (3) Whether the trial court erred in refusing to award the O'Learys compensatory damages based upon loss of financial position due to increased market interest rates.

We begin our analysis by noting that this entire dispute has at its root Chicago Title's failure to ensure that the Deed of Trust in favor of the Johnsons was released. Chicago Title acted as closing agent for the O'Learys' refinance, and at least had a duty to the new lender to make sure that the O'Learys' debt to the Johnsons was satisfied, and the Deed of Trust released. However, the record is deficient with regard to the exact status of Chicago Title *vis-a-vis* the O'Learys. In any event, the trial court correctly found that the unreleased Deed of Trust precipitated the controversy. The trial court did specifically find that Chicago Title had: (1) a duty to the O'Learys to reconcile its bank accounts to ascertain negotiation of the payoff check; (2) a duty to the O'Learys to inform the O'Learys in 1996 when Chicago Title was informed that the check had not been negotiated; and (3) a duty to properly investigate in 1999 why the Deed of Trust had not been released. The trial court found that Chicago Title breached each of the above duties, and Chicago Title has presented no issues to this Court concerning these findings by the trial court. Therefore, we consider these findings as correct and will not address them further.

We will first consider the issue presented by appellant, Chicago Title Insurance Company: Whether the trial court erred in awarding plaintiffs prejudgment interest.

The trial court awarded prejudgment interest to the O'Learys in the amount of $46,281.22, being interest at ten-percent per annum on the balance of the indebtedness due the Johnsons of $38,175.47 for a period of twelve years and 45 days.

T.C.A. § 47-14-123 (2001) provides:

> Prejudgment interest, i.e., interest as an element of, or in the nature of, damages, as permitted by the statutory and common laws of the state as of April 1, 1979, may be awarded by courts or juries in accordance with the principles of equity at any rate not in excess of a maximum effective rate of ten percent (10%) per annum; provided, that with respect to contracts subject to § 47-14-103, the maximum effective rates of prejudgment interest so awarded shall be the same as set by that section for the particular category of transaction involved. In addition, contracts may expressly provide for the imposition of the same or a different rate of interest to be paid after breach or default within the limits set by § 47-14-103.

In *Myint v. Allstate Ins. Co.,* 970 S.W.2d 920 (Tenn. 1998), our Supreme Court stated:

> An award of prejudgment interest is within the sound discretion of the trial court and the decision will not be disturbed by an appellate court unless the record reveals a manifest and palpable abuse of discretion. *Spencer v. A-1 Crane Service, Inc.,* 880 S.W.2d 938, 944 (Tenn. 1994); *Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439, 446 (Tenn. 1992). This standard of review clearly vests the trial court with considerable deference in the prejudgment interest decision. Generally stated, the abuse of discretion standard does not authorize an appellate court to merely substitute its judgment for that of the trial court. Thus, in cases where the evidence supports the trial court's decision, no abuse of discretion is found. *See State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978) (applying abuse of discretion standard to trial court's decision to deny request for suspended sentence), *cert. denied*, 439 U.S. 1077, 99 S. Ct. 854, 59 L. Ed.2d 45 (1979).

> Several principles guide trial courts in exercising their discretion to award or deny prejudgment interest. Foremost are the principles of equity. Tenn. Code Ann. § 47-14-123. Simply stated, the court must decide whether the award of prejudgment interest is

> fair, given the particular circumstances of the case. In reaching an equitable decision, a court must keep in mind that the purpose of awarding the interest is to fully compensate a plaintiff for the loss of the use of funds to which he or she was legally entitled, not to penalize a defendant for wrongdoing. ***Mitchell v. Mitchell***, 876 S.W.2d 830, 832 (Tenn. 1994); ***Otis,*** 850 S.W.2d at 446.

***Id.*** at 927. The Supreme Court also noted that in addition to the principles of equity discussed, two other criteria exist for the consideration of prejudgment interest. The first criterion is that prejudgment interest may be allowed when the amount of the obligation is certain and can be ascertained by proper accounting, and there is no reasonable dispute about the amount. The second criterion allows interest when the existence of the obligation itself is not reasonably disputed. ***Id.*** at 927.

Chicago Title asserts that the principles of equity do not support an award of prejudgment interest, that the obligation was disputed by Chicago Title, and, moreover, the obligation of Chicago Title was suspended by virtue of T.C.A. § 47-3-310 when the Johnsons accepted the check.

As to Chicago Title's assertion that prejudgment interest is not warranted because the obligation was disputed on reasonable grounds, the ***Myint*** Court addressed this quite succinctly: "Uncertainty of either the existence or amount of an obligation does not *mandate* a denial of prejudgment interest, and a trial court's grant of such interest is not automatically an abuse of discretion, provided the decision was otherwise equitable." ***Id.*** at 928.

Chicago Title also argues that the O'Learys were not deprived of the use of their money, because the money was to be used to pay off the debt owed to the Johnsons. We do not disagree with that assertion; however, we must take into consideration the fact that Chicago Title in 1996 knew that there was a problem and did nothing to take care of the problem, thus causing the O'Learys to incur the expense of correcting the problem which they were in no way responsible for creating. If Chicago Title had in 1996 reconciled its account and otherwise determined that the Johnsons' obligation had not been satisfied, there would have been no need for this lawsuit and the resulting expense to the O'Learys. Under these circumstances, the trial court's award of prejudgment interest is premised on an equitable decision. However, that is not to say that the damages awarded were properly due. T.C.A. § 47-3-310 (2001) provide in pertinent part:

> **47-3-310. Effect of instrument on obligation for which taken. -** (b) Unless otherwise agreed and except as provided in subsection (1), if a note or an uncertified check is taken for an obligation, the obligation is suspended to the same extent the obligation would be discharged if an amount of money equal to the amount of the instrument were taken and the following rules apply:

> (1) In the case of an uncertified check, suspension of the obligation continues until dishonor of the check or until it is paid or certified. Payment or certification of the check results in discharge of the obligation to the extent of the amount of the check.

By virtue of this statute, Chicago Title's obligation was suspended from the time of the closing in 1988 until Ms. Johnson presented the check for payment, and it was dishonored in 1996. Thus, while the equities are in favor of awarding the O'Learys prejudgment interest, the trial court erred in awarding such prejudgment interest for the time period set out in the judgment. Chicago Title breached its duty to the O'Learys in failing to reconcile its bank accounts and, later, to inform the O'Learys that a problem existed. The breach of these duties forced the O'Learys to take action to correct a problem not of their own making. Equitable principles justify the trial court's decision to award prejudgment interest, but only for a period of time from the date of dishonor of the check in 1996 to the date of the entry of the final order in this case.

We next address the issue of whether the trial court properly dismissed Mrs. Johnson's cross-claim against Chicago Title. We believe the trial court correctly held that Mrs. Johnson's claim against Chicago Title was barred by the ten-year statute of limitations found in T.C.A. § 47-3-118(c) (2001), which provides:

> Except as provided in subsection (d), an action to enforce the obligation of a party to an unaccepted draft to pay the draft must be commenced within three (3) years after dishonor of the draft or ten (10) years after the date of the draft, whichever period expires first.

*Id.* Subsection (d) of T.C.A. 47-3-118 provides:

> An action to enforce the obligation of the acceptor of a certified check or the issuer of a teller's check, cashier's check, or traveler's check must be commenced within three (3) years after demand for payment is made to the acceptor or issuer, as the case may be.

Mrs. Johnson asserts that the check issued in payment of her loan is a teller's check and she commenced her suit within three years after demand for payment. Despite Mrs. Johnson's assertions to the contrary, the payoff check in question is not a "teller's check" under the Tennessee Code. The Code defines that type of check as follows as "a draft *drawn by a bank* (i) on another bank, or (ii) payable at or through a bank." T.C.A. § 43-7-104(h) (2001)(emphasis added). As Chicago Title correctly points out, the payoff check was not "drawn by a bank," but was drawn by Chicago Title Insurance Company. Under these circumstances, the statute of limitations for bringing an action relating to the check began to run when it was issued, in 1988. Mrs. Johnson filed her cross-complaint against Chicago Title in January of 2000, well outside the ten-year limitation period. For these reasons, we affirm the trial court's dismissal of Mrs. Johnson's cross-claim.

The next issue is whether the trial court properly awarded Mrs. Johnson attorney's fees pursuant to the Deed of Trust. The Deed of Trust provides that, "In case of sale under this Deed of Trust, the proceeds will be applied by the Trustee:. . .[t]o pay all the costs and charges of executing this trust, including attorney's fees and the expenses of litigation which may arise on account of the execution and enforcement of this trust." The Note does, however, contain language regarding payment of attorney fees as follows:

> Demand, notice, and protest are expressly waived and if not paid in full at the time and in the manner above specified, then all principal and accrued interest shall, at the option of the legal holder hereof, become at once due and payable without notice and, in the event of such default, undersigned agrees to pay all expenses and costs, including reasonable attorney's fees, incident to collection.

The trial court found that the language of the Deed of Trust called for the O'Learys to pay Mrs. Johnson's attorney fees in this matter. We disagree, for several reasons.

First, it is unclear that the above-quoted language of the Deed of Trust or the Note covers a situation such as the one we are faced with here. This matter does not involve a "sale" under the Deed. The Johnsons never attempted to enforce collection until the O'Learys asked them to release the Deed of Trust. Second, we must consider that the Johnsons' failure to deposit the check in a timely fashion created the need for the Johnson's to hire an attorney. Also, even when made aware of the fact that her late husband had failed to deposit the check, Mrs. Johnson did nothing to secure its payment after Chicago Title failed to honor it. Instead, she placed the check in her night table where it remained until the instant litigation was commenced. "'Where one of two persons must suffer loss by the acts or fraud of a third party, he who enables that third party to occasion the loss or to permit the fraud ought to be the sufferer.'" § 2, Inman, Gibson's Suits in Chancery (7th ed); *see also Commercial Bank & Trust Co. v. Southern Indus. Banking Corp.*, 66 S.W.2d 209 (Tenn. Ct. App. 1932). As between Mrs. Johnson and the O'Learys, it would be inequitable for the individual whose conduct contributed to the need for litigation to force the innocent party to pay her attorney's fees.

Finally, we affirm the trial court's denial of the O'Learys' request for compensatory or punitive damages against Chicago Title. As to compensatory damages, the trial court found that the O'Learys' expert witness who testified as to the O'Learys' loss of a more favorable interest rate was credible. However, the trial court also found that the $15,000 the expert testified the O'Learys would lose due to the unreleased Deed of Trust was only applicable to a 30-year loan, and not the 15-year loan the O'Learys sought. We also note that, from our reading of the record, it is unclear if the O'Learys' lender withheld approval of the refinance or if the O'Learys, on their own, decided not to go through with the transaction. For these reasons, we find that the trial court did not abuse its discretion in failing to award compensatory damages.

As to the O'Learys' request for punitive damages, we also affirm the trial court's denial of the O'Learys' request. In Tennessee, "a court may . . .award punitive damages only if it finds a defendant has acted either (1) intentionally, (2) fraudulently, (3) maliciously, or (4) recklessly." *Hodges v. S. C. Toof & Co.*, 833 S.W.2d 896, 901 (Tenn. 1992). The Tennessee Supreme Court, in *Hodges*, defined these four terms as follows:

> A person acts intentionally when it is the person's conscious objective or desire to engage in the conduct or cause the result. *Cf.* T.C.A. § 39-11-302(a) (1991) (criminal definition of "intentional"). A person acts fraudulently when (1) the person intentionally misrepresents an existing, material fact or produces a false impression, in order to mislead another or to obtain an undue advantage, and (2) another is injured because of reasonable reliance upon that representation. *See First Nat'l Bank v. Brooks Farms*, 821 S.W.2d 925, 927 (Tenn.1991). A person acts maliciously when the person is motivated by ill will, hatred, or personal spite. A person acts recklessly when the person is aware of, but consciously disregards, a substantial and unjustifiable risk of such a nature that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances. *Cf.* T.C.A. § 39-11-302(c) (1991) (criminal definition of "reckless").

> Further, because punitive damages are to be awarded only in the most egregious of cases, a plaintiff must prove the defendant's intentional, fraudulent, malicious, or reckless conduct by clear and convincing evidence. This higher standard of proof is appropriate given the twin purposes of punishment and deterrence: fairness requires that a defendant's wrong be clearly established before punishment, as such, is imposed; awarding punitive damages only in clearly appropriate cases better effects deterrence.

*Id.* (footnotes omitted).

Although it is clear to us that Chicago Title is at fault in this matter, we agree with the trial court that punitive damages are not appropriate in this case. There is no evidence in the record which indicates that Chicago Title engaged in the type of egregious behavior required to sustain a punitive damage award.

In sum, the order of the trial court awarding Mrs. Johnson attorney fees is vacated. The order of the trial court awarding prejudgment interest in the amount of $46,281.22 for a period of twelve years and 45 days is vacated, and the order is modified to award the O'Learys prejudgment interest from the date in 1996 that the payoff check was dishonored to the date the final order was entered in the trial court, to be determined by the court on remand. The order in all other respects is

affirmed. The case is remanded to the trial court for such further proceedings as necessary, including the entry of an appropriate order providing for release of the Johnson deed of trust recorded in Deed of Trust Book 508, Page 644, Register's Office, Sumner County, Tennessee upon payment of the judgment to the court clerk. Costs of appeal are assessed one-half to appellant, Chicago Title Insurance Company, and its surety, and one-half to appellee, Ann M. Johnson.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.