**NOT RECOMMENDED FOR PUBLICATION**
File Name: 05a0123n.06
Filed: February 16, 2005

Nos. 03-5801; 03-5910; 03-5911

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| Hickson Corporation, | ) | |
| | ) | |
| Plaintiff-Appellee/Cross-Appellant, | ) | |
| | ) | |
| v. | ) | **ON APPEAL** FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| Norfolk Southern Railway Co., | ) | EASTERN DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellant/Cross-Appellee. | ) | |
| | ) | |
| | ) | |

**BEFORE:** Merritt, Moore, and Gilman, Circuit Judges.

**MERRITT, Circuit Judge.** This is the second time this diversity case has come before us on appeal. The first trial and appeal concerned liability for a spill of arsenic acid, a hazardous material, at the Chattanooga train yard. We upheld a jury verdict finding liability against Hickson Corporation (now known as Arch Wood Protection, Inc.)[1] and in favor of Norfolk Southern Railway, but we reversed and remanded for a new trial on damages because the jury verdict permitted double recovery by allowing recovery of damages in both tort and contract. *Hickson Corp. v. Norfolk Southern Ry. Co.*, 260 F.3d 559 (6th Cir. 2001). The case was retried solely on damages and the jury

---

[1]To minimize confusion, we will continue to refer to the plaintiff as Hickson Corporation in this opinion.

returned a verdict of approximately $3 million for Norfolk Southern, about half of what it was awarded in the first trial.

On appeal, Norfolk Southern raises four issues: (1) whether the district court erred in instructing the second jury on retrial that the original jury found that Norfolk Southern's conduct increased the harm caused by the toxic spill; (2) whether the district court erred in allowing the retrial jury to see redacted portions of a report by the National Transportation Safety Board concerning the incident; (3) whether the district court erred in admitting evidence of a prior hazardous material violation by Norfolk Southern; and (4) whether the district court erred in admitting four documents under the government-records exception. Additionally, Hickson cross-appeals a ruling allowing prejudgment interest. For the following reasons, we affirm the judgment of the district court.

**I.**

We will briefly summarize the pertinent facts. A fuller recitation of the facts can be found in our earlier opinion at 260 F.3d 559. Hickson contracted with Norfolk Southern to transport a tank car filled with arsenic acid between Hickson's plant in Conley, Georgia, and its plant in Valparaiso, Indiana. Hickson loaded the arsenic acid onto the railcar and certified to Norfolk Southern on the bill of lading that the material was in proper condition and was properly "packaged" for transportation in accordance with Department of Transportation rules and regulations. Norfolk Southern took possession of the tank car and it arrived in the deButts Yard in Chattanooga, Tennessee, several days later. The day after arriving at the deButts Yard, it was discovered that the

tank car was leaking arsenic acid. A significant amount of arsenic acid escaped the tank car. Before the leak was contained, approximately 1/4 of the acid was lost, causing contamination to the soil in two places at the railyard. Norfolk Southern was required to spend significant funds to clean up the surrounding land and water contaminated by the leaked arsenic.

Hickson, as the owner of the arsenic acid being transported, brought an action against Norfolk Southern under the Carmack Amendment to the Interstate Commerce Act, a federal statute allowing recovery against an interstate rail carrier by the owner of property damaged by the interstate rail carrier during transit. 49 U.S.C. § 11706. Norfolk Southern counterclaimed against Hickson, alleging breach of contract, negligence, nuisance, trespass and ultrahazardous activity. Norfolk Southern also filed a third-party complaint against Union Tank Car Company, the manufacturer and owner of the tank car that leaked, claiming breach of contract, negligence, nuisance, trespass and ultrahazardous activity.

After the first trial, the jury returned a verdict finding (1) Hickson liable to Norfolk Southern on the negligence and breach of contract claims; (2) Union Tank Car and two other entities liable for negligence that was a proximate cause of the leak; and (3) Norfolk Southern, its emergency response contractor and the City of Chattanooga negligent and their conduct proximate causes of increasing the harm from the leak due to their inadequate response upon discovering the leak. The district court awarded $6,725,000 in contract damages and an additional $1,120,000 in negligence damages to Norfolk Southern. Hickson claimed on appeal after the first trial that the award was in

error because Norfolk Southern did not prove any contract damages separate from negligence damages.

On appeal, we held that Norfolk Southern suffered only one injury, but the verdict form allowed for the possibility of double recovery. We remanded for a new trial on damages only, directing Norfolk Southern to elect between negligence and contract damages. Prior to retrial, Norfolk Southern dismissed without prejudice its claim against Union Tank Car, dismissed its negligence claim against Hickson and proceeded solely against Hickson on a breach of contract theory seeking $10,725,000. The retrial on damages took twenty-one days, heard intermittently over approximately six months. Thirty-five witnesses testified and 175 exhibits were admitted for consideration by the retrial jury. The retrial jury found that Norfolk Southern proved contract damages and awarded Norfolk Southern $3,120,562, an award that took into account the failure by Norfolk Southern to mitigate damages. Upon the parties' stipulation, the damage award was reduced by $540,000 for amounts previously recovered by Norfolk Southern from other parties.

Norfolk Southern moved for a new trial and for an award of prejudgment interest. On June 17, 2003, the district court denied the motion for a new trial but granted the motion for prejudgment interest. Norfolk Southern now appeals the denial of its motion for a new trial and Hickson filed a cross-appeal regarding the district court's award of prejudgment interest to Norfolk Southern.

## II.

### Instructing the Retrial Jury that Norfolk Southern's Conduct Increased the Harm Caused by the Spill

Norfolk Southern argues that the district court erred in instructing the retrial jury that the original jury found that the actions of Norfolk Southern and other parties under their control increased the damages caused by Hickson's breach. We hold that the instruction was not erroneous because it did not direct the retrial jury regarding the extent or amount of damages and was consistent with our opinion remanding the case for retrial.

The original jury made a finding that Norfolk Southern was "negligent" in responding to the spill once discovered and contributed to the harm caused by the leak. Norfolk Southern contends that because the original jury found Norfolk Southern "negligent," and because Norfolk Southern is no longer pursuing a negligence theory, the first jury's finding of fault attributed to Norfolk Southern through "negligence" cannot stand on retrial. The labeling by the original jury of Norfolk Southern's conduct as "negligent" as opposed to finding a "failure to mitigate"[2] is of no consequence on retrial. As the district court correctly noted, Norfolk Southern suffered a single injury, but part of that injury was caused by its own response to the spill. That finding of liability on the part of Norfolk Southern by the first jury was properly conveyed to the retrial jury. Norfolk Southern's change in strategy on retrial did not alter the original jury's finding that Norfolk Southern itself had contributed to the harm through its own negligence in the form of a failure to mitigate.

---

[2]Under the doctrine of mitigation of damages, an injured party has a duty to exercise reasonable care and diligence in attempting to avoid loss or minimize damages after an injury has been inflicted. To the extent that an injured party fails to exercise reasonable care and diligence, it cannot recover the full measure of damages. *See Cook & Nichols, Inc. v. Peat, Marwick, Mitchell & Co.*, 480 S.W.2d 542, 545 (Tenn. Ct. App. 1971); *Gilson v. Gillia*, 321 S.W.2d 855, 865 (Tenn. Ct. App. 1958).

All that changed was the label attached to the conduct. Therefore, the district court appropriately

instructed the retrial jury that the original jury found Norfolk Southern's conduct increased the harm

from the spill. We find no error in the district court's instruction.

## III.

### Evidentiary Issues

Norfolk Southern claims error in three evidentiary rulings made by the district court. Two

of these rulings were extensively litigated below and resulted in a published decision by the district

court. *Hickson Corp. v. Norfolk Southern Ry. Co.*, 227 F. Supp. 2d 903 (E.D. Tenn. 2002).

### A. Report by the National Transportation Safety Board

Norfolk Southern contends that the district court erred in admitting excerpts of a report from

the National Transportation Safety Board regarding the arsenic acid leak. Title 49 of the United

States Code, which deals with transportation, states:

> No part of a report of the [National Transportation Safety] Board,
> related to an accident or an investigation of an accident, may be
> admitted into evidence or used in a civil action for damages resulting
> from a matter mentioned in the report.

49 U.S.C. § 1154(b). The primary thrust behind the statute making the National Transportation

Safety Board's reports of accidents inadmissible in actions arising out of such accidents is to exclude

reports that express agency views as to the probable cause of the accident, a finding that should be

the province of the jury or factfinder. *See, e.g., Chiron Corp. & PerSeptive Biosystems, Inc. v. Nat'l

Trans. Safety Bd.*, 198 F.3d 935, 940 (D.C. Cir. 1999); *Berguido v. Eastern Air Lines, Inc.*, 317 F.2d

628, 631-32 (3d Cir. 1963).

Despite the plain language of the statute, Hickson argues that introduction of factual excerpts from the report was necessary to rebut a letter introduced by Norfolk Southern written on National Transportation Safety Board letterhead and signed by the then-Director of the National Transportation Safety Board, James Hall. Counsel for Hickson gave Norfolk Southern fair warning that he would seek to introduce the National Transportation Safety Board's report to rebut the hearsay statements by the head of the Board.[3] In the letter, Mr. Hall praises Norfolk Southern for its conduct in response to the spill and clean up at the Chattanooga train yard. Mr. Hall is a long-

---

[3]The parties dispute whether Hickson adequately objected to the introduction of the Hall letter. During the direct examination of Norfolk Southern employee Jack Waters, counsel for Hickson states "[w]e have an objection," whereupon counsel for both parties discuss whether introduction of the Hall letter and the National Transportation Safety Board report would be proper. The Court says it "is going to overrule the objection" and admit the letter as character evidence. Norfolk Southern then moves to introduce the Hall letter and counsel for Hickson objects, saying that introduction of the letter "simply opens the door to the [NTSB Report] coming in . . . ." The following exchange ensues:

| | |
|---|---|
| THE COURT: | Well, that's [Norfolk Southern's] counsel's call, though. |
| MR. O'DAY [counsel for Hickson]: | That's right. So I'm serving notice that that's what we intend to do in order to rebut this. |
| THE COURT: | Well, that's not an objection. So it's admitted. |

Direct Examination of Jack Waters, Trial on Damages Trans. at 1193-96, J.A. at 1295-98. It appears from the record that although Judge Collier did not find an adequate objection, Hickson did attempt to preserve its objection to the Hall letter. In view of the fact that Hall was head of the National Transportation Safety Board and appeared to speak for the agency, counsel for Hickson made it clear that he would seek to introduce the Board's report concerning the leak to disprove statements in the Hall letter that Norfolk Southern's response to the spill deserved praise.

time resident of Chattanooga who is widely-known and well-respected in the local community. *See Hickson*, 227 F. Supp. 2d at 905 n.2. By introducing the Hall letter and presenting testimony about the letter, Norfolk Southern raised an inference with the jury that the National Transportation Safety Board specifically approved of Norfolk Southern's conduct regarding the spill and clean up.

As Hickson rightly argues, that inference was not correct. The National Transportation Safety Board, subsequent to the date of Mr. Hall's letter, undertook an investigation of the spill and issued a report that was critical of Norfolk Southern's response to the spill. The district court found it had to admit excerpts from the Board's report to cure the prejudicial inference that arose when Norfolk Southern introduced Hall's letter. 227 F. Supp. 2d at 908. Clearly, it would have been better for neither the Hall letter nor the Board report to come before the jury. Both should have been excluded.

We agree with the district court's ruling on the admissibility of portions of the Board's report. Any error in admitting portions of the National Transportation Safety Board's report on the spill was invited by Norfolk Southern's own actions in introducing the Hall letter implying contrary findings. It is well established, in a doctrine known as the "invited error rule," "that a party may not complain on appeal of errors that he himself invited or provoked the court . . . to commit." *Toth v. Grand Trunk R.R.*, 306 F.3d 335, 354 (6th Cir. 2002); *Harvis v. Roadway Express, Inc.*, 923 F.2d 59, 60 (6th Cir. 1991). Norfolk Southern waived the right to challenge the admissibility of portions of the National Transportation Safety Board report introduced by Hickson because it knowingly "opened the door" to such admission. The introduction of evidence by one party "opens the door"

for an opponent to introduce evidence on the same issue to rebut any false impression that was given. *United States v. Whitworth*, 856 F.2d 1268, 1285 (9th Cir. 1988); *see also Zieman v. City of Detroit*, No. 94-1660, 1996 WL 140328, at *4 (6th Cir. Mar. 27, 1996); *Elledge v. Bacharach Instrument Co.*, Nos. 91-1931, 91-1952, 1992 WL 205662, at *3 (6th Cir. Aug. 25, 1992). "Introduction of otherwise inadmissible evidence under shield of this doctrine is permitted 'only to the extent necessary to remove any unfair prejudice which might otherwise have ensued from the original evidence.'" *Whitworth*, 856 F.2d at 1285 (citing *California Ins. Co. v. Allen*, 235 F.2d 178, 180 (5th Cir. 1956)). By introducing the Hall letter, which Norfolk Southern knew could make a strong impression on the jury given Mr. Hall's position and reputation in the community, Norfolk Southern "opened the door" to introduction of the Board report. To reject portions of the report would undoubtedly have left the jury with the impression that the National Transportation Safety Board had approved of Norfolk Southern's response to the spill.

## B. **Introduction of Norfolk Southern's Prior Felony Conviction**

Norfolk Southern, through Henry Wyche, one of its environmental officers, introduced evidence of its good environmental and safety reputation, including a reference to a gold medal for safety awarded to the company for twelve consecutive years. Norfolk Southern portrayed itself to the jury as having a stellar environmental record, thereby inferring that its conduct in response to the leak would be in conformity with its past conduct and therefore environmentally sound. Hickson sought to rebut this testimony by introducing evidence that Norfolk Southern had been convicted of a felony for improperly disposing of paint.

Relying on Federal Rule of Evidence 609,[4] the district court permitted Hickson to introduce the evidence of the prior conviction. *Hickson*, 227 F. Supp. 2d at 907-08. Rule 609(a) authorizes admission of evidence of a prior felony conviction to attack the credibility of a witness if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect on the accused. In a matter of apparent first impression in the Sixth Circuit, the question before us is whether Rule 609 permits the use of a corporation's prior criminal conviction to impeach a corporate representative's testimony. Norfolk Southern argues that it does not, noting that Rule 609 only permits the use of prior convictions of "the witness," and, in this case, the witness, Henry Wyche, was not convicted of a crime.

Other than the district court's decision below, we have located only two cases that discuss whether Rule 609 may be used against a corporation in a civil case: *Walden v. Georgia-Pacific Corp.*, 126 F.3d 506 (3d Cir. 1997), and *Stone v. C.R. Bard, Inc.*, No. 02 CIV 3433 WHP, 2003 WL

---

[4]Rule 609. Impeachment by Evidence of Conviction of Crime

(a) General rule. For the purpose of attacking the credibility of a witness,

> (1) evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and evidence that an accused has been convicted of such a crime shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused . . . .

Fed. R. Evid. 609(a).

22902564, at \*2-\*3 (S.D.N.Y. Dec. 8, 2003). The two decisions reach opposite results concerning the propriety of using Rule 609 to impeach a corporation's testimony, as introduced through a corporate representative, instead of impeaching an actual person. The court below followed *Stone,* finding that "[b]ecause a corporation speaks through its officers, employees, and other agents . . . it stands to reason that a corporation can be a vicarious witness. The Court concludes, therefore, [that] Rule 609 allows the use of a corporation's felony conviction to impeach the corporation's vicarious testimony." *Id.* at 907.

We will not decide in this case whether Rule 609 should be applied in this manner because, like the introduction of the Hall letter discussed in the section above, we believe that the best course of action would have been to exclude *any* evidence of Norfolk Southern's environmental record that was not directly related to this incident. But, because Norfolk Southern opened the door to evidence concerning its environmental record, we agree with the district court that Hickson was entitled to rebut evidence introduced by Norfolk Southern that it had an unblemished corporate record on environmental matters. To not admit evidence of the felony conviction would have left the jury with only part of the picture concerning Norfolk Southern's safety and environmental record. Like the situation with the Hall letter, the "invited error" doctrine applies to allow evidence of the conviction before the jury. Any error in admitting the prior felony conviction was invited by Norfolk Southern's own actions in introducing evidence to imply an unblemished environmental record.

Moreover, any admission under Rule 609 was harmless because the evidence could have come in alternatively under Federal Rule of Evidence 405. Under Rule 405, once a party "opens the

door" to reputation or character evidence on direct examination, inquiry is allowed into "relevant specific instances of conduct" that rebut or impeach that evidence.

**C.  Admissibility of Exhibits 740, 958, 959 and 961**

Norfolk Southern contends that the district court erred in admitting Exhibits 740, 958, 959 and 961 on the ground that the information contained in the exhibits violates Federal Rule of Evidence 801, the "hearsay" rule.  We conclude that the exhibits were inadmissible, but their admission was harmless error because they did "not affect the substantial rights of the parties."  28 U.S.C. § 2111.  Specifically, Norfolk Southern objects to the reference in each document to 7:00 p.m. on June 5, 1994, as the time the spill was discovered, when in fact the spill was discovered approximately eight hours later.  Exhibit 740 is a computer-generated "incident activity summary" generated by the county for the Chattanooga Fire Department detailing the sequence of events following its receipt of information concerning a hazardous materials spill at the deButts yard. Exhibit 958 is an "emergency release notification worksheet"  used by the Tennessee Emergency Management Agency.  It is a two-page, fill-in-the-blank form documenting the name of the chemical released, the amount if known, the place, time and date of the release and other basic information. Exhibit 959 is a "non-emergency notification" form used by the Division of Solid Waste Management at  the Tennessee Department of Environment and Conservation.   The form records the time and date when information regarding a spill is received by the Department, the location, material involved and leaves room for a brief description of the incident.  Exhibit 961 is a handwritten message taken by a Department of Environment and Conservation employee concerning

the arsenic acid leak at issue in this case and a tractor trailer truck accident in Nashville that spilled diesel fuel on the highway.

Exhibits 958, 959 and 961 were completed contemporaneously with or shortly after the time when the agency or department in question received information from an outside source about a potential hazardous situation that might fall within the jurisdiction of or otherwise involve the agency or department in question. Exhibit 740, the "incident activity summary," is a computer-generated summary based on information received by the county at the time the leak was reported to it. The information contained in each document was relayed to a government official via a phone call or series of phone calls among several people before being recorded on the document. Each of the documents in question indicates that an arsenic acid leak was discovered "at 1900 hours" [7:00 p.m.] on June 5, 1994 and that the initial source of the information was Norfolk Southern employee Bobby Nichols, the night chief dispatcher in Knoxville, Tennessee. Mr. Nichols' duties include notifying and providing information to the appropriate governmental authorities regarding the release of any hazardous materials at the deButts train yard. Mr. Nichols received his information from Steve Massey, a Norfolk Southern employee stationed at the train yard. None of the documents contain any opinions about what caused the leak, and each records only the fact that a spill of potentially hazardous material has occurred, along with necessary information such as time and place, to ensure that the proper authorities are notified and proper precautions taken to secure public safety.

The district court admitted the record under the hearsay exception for public records in Federal Rule of Evidence 803(8)(A).[5] Norfolk Southern objected to their introduction because it claims that the documents contain multi-level hearsay and, as a result of the relaying of information from one person to another, the time that the leak was discovered was erroneously recorded on the government documents. Hickson then used the erroneous information contained in the documents to suggest to the jury that Norfolk Southern's response to the leak was too slow, thereby causing more harm from the leak and potentially reducing the damages Norfolk Southern would recover.

The Advisory Committee Notes to Rule 803(8) state that the rule "assumes admissibility in the first instance but with ample provision for escape if sufficient negative factors are present." In light of this presumption of admissibility, the party opposing the admission of the report must prove

---

[5]Federal Rule of Evidence 803 provides in relevant part:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

> (8) Public records and reports. Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, or (C) in civil actions and proceedings and against the Government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

Federal Rule of Evidence 803(8).

that the report is not trustworthy. *Bank of Lexington & Trust Co. v. Vining-Sparks Securities, Inc.*, 959 F.2d 606, 616 (6th Cir. 1992); *Baker v. Elcona Homes Corp.*, 588 F.2d 551, 558 (6th Cir. 1978). To determine whether a report is trustworthy, the Advisory Committee suggests four factors to consider: (1) the timeliness of the investigation; (2) the special skill or experience of the investigators; (3) whether the agency held a hearing; and (4) possible motivational problems. *See Baker*, 588 F.2d at 558 (applying the four listed factors in reviewing a district court's decision to admit a report). In addition, we have stated that when admitting a public record or report "[R]ule 803(8)(C) [should be applied] in a common sense manner, subject to the district court's sound exercise of discretion in determining whether the hearsay document offered in evidence has sufficient independent indicia of reliability to justify its admission." *Miller v. Caterpillar Tractor Co.*, 697 F.2d 141, 144 (6th Cir.1983) (quoting *City of New York v. Pullman, Inc.*, 662 F.2d 910, 914 (2d Cir.1981)).

Applying the factors to the situation herein to determine the trustworthiness of the documents is not particularly helpful in reaching a conclusion. We do, however, look to the admonition from *Miller* to use "common sense . . . in determining whether the hearsay document offered in evidence has sufficient independent indicia of reliability to justify its admission" and conclude that these documents do not. They do not reflect who the initial person was to discover and report the leak, and the chain of information from one person to another is unclear. We note that it is not necessary in all cases that the person who prepares the report have first-hand knowledge of the event, but when that is not the case the "independent indicia of reliability" is diminished. *See* Jack B. Weinstein &

Margaret A. Berger, 5 Weinstein's Federal Evidence § 803.10[3][a] at 803-91 (2003) (Although "the person who prepared the report is typically required to have personal knowledge of the activities or facts . . . government officials may rely on colleagues or subordinates who have the requisite knowledge.").

We recognize the conflicting factors and authority in this situation that prompted the district court to admit these documents. The Tennessee Department of Environment and Conservation and the Tennessee Emergency Management Authority, which prepared Exhibits 958, 959, and 961, regularly prepare reports of hazardous environmental situations. Rule 803(8) was designed to permit the admission of these types of exhibits into evidence, even if the person with knowledge of the underlying facts is not present. *See, e.g., United States v. Midwest Fireworks Mfg. Co.*, 248 F.3d 563, 566 (6th Cir. 2001) (admitting, pursuant to Rule 803, reports prepared by the employees of the Consumer Products Safety Commission who have no independent recollection of the reports as a "practical necessity" because the employees make thousands of such reports each year); *In re Oil Spill by the Amoco Cadiz*, 954 F.2d 1279, 1308 (7th Cir.1992) ("Nothing in either the text or the history of Rule 803(8) supports an approach that would make the rule essentially useless – for the bureaucrat who fills out a governmental form usually incorporates information furnished by others."); *Ellis v. Int'l Playtex, Inc.,* 745 F.2d 292, 302 (4th Cir.1984) (finding that the unavailability of the investigators is not reason alone to exclude their studies). Here, although the exhibits were compiled by a public agency and included "factual findings resulting from an investigation made pursuant to authority granted by law," the original information recorded on the documents did not

originate with a government official and the multiple levels of hearsay result in a lack of the necessary indicia of reliability to make the documents trustworthy and hence admissible.

Despite the erroneous admission of these four documents, the error was harmless. Norfolk Southern concedes in its brief to this Court that "all the evidence of record (including Hickson's) is that Solomon Thomas discovered the leak early on June 6, 1994." Norfolk Southern Br. at 56. Mr. Thomas himself, as well as other witnesses, testified about the time of discovery of the leak. The overwhelming evidence in the record concerning when the leak actually was discovered was not eclipsed by these four isolated documents. *See, e.g.,* Exhibit 120, Attachment 1, Letter dated July 13, 1994, from Tennessee Department of Environment and Conservation to Henry Wyche, Assistant Vice President, Environmental Protection Division of Norfolk Southern (noting time of discovery of leak as 3:15 a.m. on June 6, 1994); Exhibit 565, Norfolk Southern form dated June 6, 1994, recording "Spills, Discharges or Releases of Hazardous Materials, etc." (noting time of discovery of leak as 3:00 a.m. on June 6, 1994). Based on the overwhelming evidence that the time stated in the exhibits was eight hours too early, we do not believe that the jury was misled, or that it reduced Norfolk Southern's damages award, because the exhibits contained this error.

**IV.**

**Cross-Appeal by Hickson Regarding the Award of Prejudgment Interest**

Hickson cross-appeals from the district court's award of prejudgment interest in the amount of $425,473.56. We review the district court's ruling on prejudgment interest for an abuse of discretion. *Clay v. Ford Motor Co.*, 215 F.3d 663 (6th Cir. 2000). However, the question of

whether the district court had authority to grant prejudgment interest is a question of state law which

we review de novo. *FDIC v. First Heights Bank, FSB*, 229 F.3d 528, 542 (6th Cir. 2000). Because

this is a diversity action, Tennessee law controls the award of prejudgment interest. Tennessee law

provides:

> § 47-14-123. Prejudgment interest
>
> Prejudgment interest, i.e., interest as an element of, or in the nature of, damages, as permitted by the statutory and common laws of the state as of April 1, 1979, may be awarded by courts or juries in accordance with the principles of equity at any rate not in excess of a maximum effective rate of ten percent (10%) per annum; provided, that with respect to contracts subject to § 47- 14-103, the maximum effective rates of prejudgment interest so awarded shall be the same as set by that section for the particular category of transaction involved. In addition, contracts may expressly provide for the imposition of the same or a different rate of interest to be paid after breach or default within the limits set by § 47-14-103.

Tennessee Code Ann.§ 47-14-123. Courts need not award prejudgment interest to every prevailing

party but should award prejudgment interest when it is fair, given the particular circumstances of

the case. *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998); *O'Leary v. Johnson*, 84

S.W.3d 584, 589 (Tenn. Ct. App. 2002). Prejudgment interest is an element of damages to be

awarded in accordance with principles of equity. *See Otis v. Cambridge Mut. Fire Ins. Co.*, 850

S.W.2d 439 (Tenn. 1992).

The common-law power to award prejudgment interest has consistently been viewed as an

equitable matter entrusted to the judge's discretion. Accordingly, Tenn.Code Ann. § 47-14-123 has

been construed to preserve the discretionary character of these decisions. *Alexander v. Inman*, 974

S.W.2d 689, 697-98 (Tenn. 1998); *Spencer v. A-1 Crane Serv., Inc.*, 880 S.W.2d 938, 944 (Tenn.

1994).   Appellate courts will not disturb a trial court's decision regarding prejudgment interest "unless the record reveals a manifest and palpable abuse of discretion." *Myint*, 970 S.W.2d at 927.

The primary purpose in awarding prejudgment interest is to assure that the plaintiff is fully compensated for the lost use of funds to which he or she was entitled. *Harrison v. Laursen*, 128 S.W.3d 204, 209-10 (Tenn. Ct. App. 2003).  The district court reasoned that Hickson's liability to Norfolk Southern had been established since December 18, 1998, when the first jury returned its liability findings, and only the damage amount has been in question since that time.  Because the damage amount to Norfolk Southern was reduced substantially on retrial, the district court found it equitable to compensate Norfolk Southern for the loss of use of its funds during the ensuing six years.

We conclude that the district court's decision to award prejudgment interest was an equitable decision and that Norfolk Southern was not unfairly compensated by such an award under the circumstances of this case.  We also hold that the district court fairly and correctly calculated prejudgment interest in accordance with Tennessee law.  Finding no abuse of discretion, we affirm the district court's award of prejudgment interest.

For the foregoing reasons, we affirm the judgment of the district court.